### James Forney *v.* William W. Weigley, Appellant.

*Attorney at law — Claim for professional services—Evidence—Question
for jury—Statute of limitations.*

In an action against an attorney at law for breach of contract where the
defendant sets up as a counterclaim the value of certain professional ser-
vices rendered to plaintiff, and the evidence is conflicting as to whether
any such services were rendered, the case is for the jury.

In such a case where the claim for some of the services is barred by the
statute of limitations, but defendant testifies to a promise made by the
plaintiff to pay the debt notwithstanding the bar of the statute, and the
plaintiff denies that he ever made such a promise, the case is for the jury.

Argued Jan. 7, 1896. Appeal, No. 218, Jan. T., 1895, by
defendant, from judgment of C. P. No. 2, Philadelphia Co.,
June T., 1893, No. 408, on verdict for plaintiff. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Assumpsit to recover for the breach of an agreement to pay
a portion of a promissory note. Before JENKINS, J.

At the trial it appeared that on June 3, 1892, plaintiff gave to
defendant, his brother-in-law, a promissory note for $1,800 to be
discounted for their mutual accommodation. Defendant gave
to plaintiff a memorandum in writing agreeing to pay $500 of

the note at maturity. When the note became due defendant refused to pay the $500, setting up as a counterclaim the value of certain professional services alleged to have been rendered by him to plaintiff. The first item of special importance was for services alleged to have been rendered in 1882, in saving plaintiff from being reported for a breach of duty while he was acting as commanding officer of the marine at Pensacola navy yard.

The second important item was $600 for professional services alleged to have been rendered by defendant to plaintiff from 1884 to 1888 in regard to a Mrs. Enger, with whom it was alleged plaintiff had had illicit relation, whose displeasure he had incurred by withdrawing from her company, and who had sought to establish some sort of a claim against him for such desertion. Mrs. Enger denied that she made any claim.

The third important item was $250 for professional services alleged to have been rendered by defendant to plaintiff in 1892, in the matter of a settlement of a disagreement between the plaintiff and his wife, and obviating a consequent proposed separation.

The wife was not called or examined as a witness upon this item or on any branch of the case.

The court charged in part as follows :

But, gentlemen, that claim is for services rendered in 1882, and the plaintiff at the close of the testimony in this case today has filed the plea of the statute of limitations ; in other words, he has filed a plea saying that the right of action did not accrue within six years of the time of the filing of the defendant's plea. And that would be a good defense to that claim, were it not that Mr. Weigley testifies that in 1892, at the time of this conversation in his office, Jas. Forney promised to pay him for his services rendered in the case upon the settlement of Col. John W. Forney's estate, the father of the present plaintiff.

The plaintiff denies that. The plaintiff says, he did speak about it; he did tell Mr. Weigley at that time, that he thought he had been of great service to him there, but he says he did not promise to pay for it. You are to pass upon that question. The statute of limitations has been interposed, but all the testimony was presented without it having been interposed. [You are to say whether or not at the time this conversation occurred

in the Drexel building, Jas. Forney promised the defendant to pay him for his services. If he did not so promise, then the statute of limitations having been pleaded, that would be the end of it. If he did so promise, you are to consider what is the fair value for those services.] [2]

[There are two other claims to sustain which testimony was produced before you. But since the statute of limitations has been pleaded here, I have withdrawn those claims from you,— the claim for the revocation of the power of attorney, and the consulting fee in what is called the Graham matter;—those are not before you, the statute of limitations having been pleaded, and there being no evidence of an express promise to pay for those services within six years from the time of the filing of the plea, you will not consider them at all. They are withdrawn from your consideration.] [6]

Then comes the case called that of "Mrs. E." Gentlemen, there has been considerable discrepancy in the testimony between the plaintiff and the defendant in regard to that. The plaintiff rather taking position that nothing was done upon the part of the defendant that might be regarded in the nature of services. Gentlemen, you will have the correspondence between the plaintiff and the defendant in relation to this matter of the claim of what they call Mrs. E., Mrs. Enger. According to my recollection, it opens by a letter from the plaintiff to the defendant in which he calls the defendant's attention to the matter, saying he does not believe he can get rid of Mrs. Enger without a fight. I have the letter before me (reading). It says: "I anticipate that she will not give way without a fight, but by calm persuasion I think she will leave." As Mr. Weigley by that time knew of the relations existing between the plaintiff and Mrs. Enger, and he had received a letter like that, it certainly was a call upon him to use the very best ability he possessed for the purpose of aiding the plaintiff to get rid of this woman, and it passes my understanding how the plaintiff can undertake to claim here that he did not call upon the defendant to render him any service when he wrote a letter like that. It seems that Mrs. Enger did go to the office of Mr. Weigley, and Mr. Weigley tells you that she made some claim.

Just as Mr. Pettit told you to-day, it does not make much difference in a case like that whether or not the woman's claim

is valid, if she has anything that would afford a pretense for a claim; because the important matter is not a legal determination of the contest between her and the man as to whether or not she has a legal claim, but it is as to not having any public exposition of it, and not have her bring any claim. If you believe the defendant in the case as to what he did in the matter of her having a claim, while she might not have had a claim of breach of promise or any other claim, yet I can readily understand that counsel getting a letter like that, and knowing of the relation existing between this man and this woman, might fear she would do it, because the ordinary experience of members of the bar is that such claims are very frequently made, and the man, as Mr. Pettit told you to-day, is always at a disadvantage. Mr. Weigley tells you he did perform the services in regard to that matter.

You then come to the question of the controversy between the plaintiff and his wife. There seems to be no doubt that was the case, because both the plaintiff and the defendant testify that there was some trouble between the plaintiff and his wife and that the wife did call upon Mr. Weigley. The wife is not called in the case, and therefore as to what occurred between the wife and Mr. Weigley you have no evidence except Mr. Weigley's own testimony, and the wife could be called to contradict the defendant if his testimony is not to be relied upon, or if the plaintiff wished to contradict him. As she has not been called to contradict him, I think you may fairly take it his testimony is true, and could not be contradicted by the plaintiff, for the plaintiff had it in his own hands to do it, if he wished to. Mr. Weigley testified that the wife came to him and wanted to consult him with regard to a divorce, mentioning that the conduct of the plaintiff had been such as to entitle her to a divorce. Mr. Weigley says he told her that he was the counsel for her husband and could not represent her; she would have to have other counsel, but he would tell the husband about it, and he did tell the plaintiff about it. Then there seems to have been a number of interviews between them, and there was some paper drawn. Mr. Weigley tells you there were articles of separation drawn between the plaintiff and the wife, but that the matter however was finally blown over. That he was entitled to compensation for those services and his charge is $250.

As to that item, the statute of limitations does not apply, because those services were rendered within a time, six years from the time of the bringing of the action, and therefore the statute could not be pleaded against it. [You are to determine, however, whether or not the plaintiff did render any services, and what is the value of the services; that is, with regard to every one of those items I have read to you except those items which have been agreed to. You are to determine, did the defendant render any services for the plaintiff, at the plaintiff's request?] [4] Then you are to say what is the fair value of those services. [Then you are to say as to those which would be barred by the statute of limitations, did the plaintiff within six years prior to the time of the filing of the plea in the case, which was upon January 5, 1894, promise the defendant to pay him for the services.] [5] If you so find, then you should find as to that item for the defendant. So you are to ascertain which of these items, if any, you will allow, and those you do allow you may add up together, because the date both counsel have agreed upon from which you are to count interest, I understand, is May 25, 1893.

Verdict and judgment for plaintiff for $322.95. Defendant appealed.

*Errors assigned* were (2, 4, 5, 6,) above instructions, quoting them.

*Samuel C. Perkins, Charles F. Eggleston* with him, for appellant.—Even if no specific sum is mentioned in the promise to pay, even if the services are shown to have been rendered by an attorney to a client, the law implies a promise to pay what the services were worth: Foster v. Jack, 4 Watts, 334; Thompson v. Boyle, 85 Pa. 477; Bank v. Combs, 7 Pa. 543; Gray v. Breckenridge, 2 P. & W. 75.

Where uncontradicted evidence is given by witnesses, called as experts, of the value of services or of the subject matter in controversy, the jury are bound to render a verdict in accordance with the testimony and cannot fix an arbitrary value of their own; Flower v. Balt. R. R. Co., 132 Pa. 525; Ernest v. Tumbler, 1 Lehigh Valley, 133; Hawman v. Turnpike Co., 2 Woodward, 332.

Where the services for which an attorney seeks to recover against a client are continuous, the statute of limitations does not begin to run till the termination of the relation of attorney and client, or the liability in respect to any particular matter has entirely ceased: Lyon v. McManus, 4 Binney, 167; Lichty v. Hugus, 55 Pa. 435; Norris' Appeal, 71 Pa. 106, 123; Campbell's Admr. v. Boggs, 48 Pa. 524.

*W. Horace Hepburn*, for appellee.—Cited on the statute of limitations: Hale's Executors v. Ard's Ex., 48 Pa. 24; Musgrove v. Golden, 101 Pa. 605; Patterson v. Neuer, 165 Pa. 66; Landis v. Roth, 109 Pa. 621; Miller v. Baschore, 83 Pa. 356.

PER CURIAM, January 20, 1896:

This suit was brought to recover a single item of $506.84, with interest from May 25, 1894, the correctness of which was virtually conceded. The defense consisted of several counter-claims aggregating $3,940, for which amount, less credits of $905.12, including plaintiff's claim in this action, the defendant, in the outset, claimed a certificate in his favor. During the trial, however, he withdrew by leave of court the last item, $2,000, of his counterclaim. The controversy was thus restricted to the remaining nine items, all of which were disputed, and as to some of them the statute of limitations was pleaded. The testimony was conflicting and presented a case that was clearly for the jury. It was submitted to them with instructions which appear to be substantially correct and adequate, and a verdict in favor of plaintiff for $322.95, was returned. This necessarily implies a finding against the defendant as to the whole of his counterclaim, except the sum of about $230.

An examination of the record, with special reference to the several assignments of error, has failed to convince us that any of the specifications should be sustained. We find no substantial error in any of the rulings complained of. The case depended mainly on questions of fact, which have been determined by the verdict. There is nothing in either of the assignments of error that requires discussion. They are not sustained.

Judgment affirmed.